**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **BUZZ SEATING, INC.** | : | Case No. |
| 4774 Interstate Drive | ) | |
| Cincinnati, OH 45246 | : | |
| | ) | |
| Plaintiff, | : | **COMPLAINT (JURY DEMAND** |
| | ) | **ENDORSED HEREON)** |
| v. | : | |
| | ) | |
| **REIMERS FURNITURE MFG, INC. DBA** | : | |
| **RFM SEATING** | ) | |
| 619 SW Wood Street | : | |
| Hillsboro, OR 97123 | ) | |
| | : | |
| | ) | |
| Defendant. | | |

Now comes, Buzz Seating, Inc. (hereinafter, the "Plaintiff" or "Buzz Seating"), by and through counsel, and for its Complaint against Reimers Furniture Mfg., Inc. dba RFM SEATING (hereinafter, the "Defendant" or "RFM Seating"), hereby states as follows:

**PARTIES**

1.  Buzz Seating is an Ohio corporation organized under the laws of the State of Ohio with its principal place of business and operations located at 4774 Interstate Drive, Cincinnati, OH 45246.

2.  Buzz Seating began operations in November 2003 and is based in Cincinnati, Ohio. Plaintiff advertises, markets, distributes and sells a number of lines and models of commercial contract seating, including, specifically designed chairs, throughout the country. Buzz Seating sells many product lines, and collections of different types of office, desk and/or commercial chairs.

1

3. RFM Seating is an Oregon corporation organized under the law of the State of Oregon with its principal place of business and operations located at 619 SW Wood Street, Hillsboro, OR 97123.

4. RFM Seating was incorporated on May 15, 1980, and states it is a "manufacturer of ergonomic seating" in its Annual Reports to the Oregon Secretary of State.

5. RFM Seating is a distributor, supplier, seller and/or manufacturer of chairs throughout the country through its website (www.rfmseating.com) and a network of representatives selling and distributing RFM Seating's products in all fifty states.

6. RFM Seating's website identifies its sales representative to contact for the purchase of its goods for the state of Ohio as Doug Zott from Zott Marketing and Design Services, LLC. Zott Marketing & Design, LLC ("Zott") is a limited liability company organized under the laws of the State of Ohio and its registered agent's address is located in Hamilton, Ohio.

7. Zott sells RFM Seating's products in Ohio. Based on information and belief, any orders for products sold by Zott in the State of Ohio are fulfilled by RFM Seating.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1338(a) because the issues in controversy arise under federal law, and more specifically, an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1, *et seq.*

9. RFM Seating has maintained sufficient contacts with the State of Ohio for this Court to exercise jurisdiction over Defendant. Defendant RFM Seating has conducted business in the State of Ohio through its representative and with various customers in the State of Ohio. RFM Seating engages in business in the State of Ohio through contracts, providing samples, quotes/bids

and fulfilling purchase orders for products which RFM Seating fulfills through its Ohio-based representative within the State of Ohio. RFM Seating has marketed, promoted and sold the product at issue in this action which infringes on the well-established patent-protected rights of Buzz Seating in Ohio; thereby, causing harm to Buzz Seating in Ohio.

10. This Court has personal jurisdiction over RFM Seating because 1) RFM Seating engaged in business in Ohio; 2) RFM Seating has sufficient contacts in Ohio; 3) RFM Seating has contracted for the supply of goods for which it derived a great deal of revenue from products supplied and delivered in Ohio; 4) RFM Seating's actions against Buzz Seating were done with the purpose of injuring Buzz Seating in Ohio; and 5) RFM Seating's actions have caused injury to Buzz Seating in this District when RFM Seating would reasonably expect Buzz Seating would be injured in Ohio.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)-(c) because a substantial part of the events and omissions giving rise to Buzz Seating's claims herein occurred in this District.

12. Title 35 of the United States Code (the "Patent Act") provides Buzz Seating with the exclusive right to use, offer for sale, and/or sell the protected designs set forth in the Patents throughout the United States. *See,* 35 U.S.C. § 154.

## BACKGROUND

13. Buzz Seating designed the SHIELD Chair® to accommodate maintenance, utility, security, law enforcement or anyone wearing a utility or duty belt that can obstruct the ability to get in or out of a restrictive chair, resulting in damage to the chair and/or the belt contents, or possible injury to the individuals. Through the design and development of the SHIELD Chair®,

Buzz Seating identified various issues with existing chairs related to an end-user customer who wears a utility belt or weaponry, and created a unique design to resolve and address these issues.

14. Prior to the SHIELD Chair®, existing chairs failed to adequately accommodate individuals who wear tools or weaponry. Individuals can become encumbered or entangled, restricting motion and access, because of duty belts and associated tools or equipment, such as flashlights, communication devices, manual tools, weaponry and utilitarian accessories. As a result, an individual is forced to remove the contents of the belt or the belt itself before sitting in existing chairs. With existing chairs prior to SHIELD Chair®, the chair can be severely damaged (ripped) or broken by an individual attempting to sit. Weaponry and tools tend to be very heavy with sharp/jagged edges, such that functional mechanisms of the existing chairs can break and comfort mechanisms of the chair (e.g., upholstery, etc.) can rip or tear. A sturdy chair could also cause the weaponry or tools to be damaged when the individual forcibly attempts to sit. Further, with existing chairs, individuals may get stuck in their chair when trying to stand up.

15. Buzz Seating identified a need for an improved chair and designed a new and unique product that provides adequate support for individuals wearing attached weaponry and/or tools, promoting safety through ease of movement while allowing access to the duty belt, and easing restrictions due to hardware. Prior to Buzz Seating manufacturing and selling its SHIELD Chair®, there were no similarly designed chairs. Buzz Seating has been manufacturing and selling its SHIELD Chair® since 2011.

16. Buzz Seating is the owner of three (3) patents for its SHIELD Chair®.

17. The unique and proprietary design of the SHIELD Chair® is protected by Patent No. US 10,426,269 B1 (filed on April 30, 2018, approved on October 1, 2019); Patent No. US 10,945,530 B2 (filed on August 27, 2019, approved on March 16, 2021 (continuation of Patent

No. US 10,426,269)('269 patent); and Patent No. US 11,812,871 B2 (filed on March 5, 2021, approved on November 14, 2023 (continuation of Patent No. US 10,426,269) ('871 Patent) and Patent No. US 10,945,530)('530 Patent) (the "Patents"). A true and accurate copy of the Patents are attached hereto as Exhibit A.

      18.     Buzz Seating designed the SHIELD Chair®, incorporating the protected claims in the Patents, to accommodate maintenance, utility, security, law enforcement or anyone wearing a utility or duty belt that can obstruct the ability to get in or out of a restrictive chair, resulting in damage to the chair and/or the belt contents, or possible injury to the individuals.

      19.     The Patents are valid and in force.

      20.     The Patents' Abstract provides the description of the overall design:

(57) **ABSTRACT**

A chair includes a back member and arm brackets. The back member is tapered toward an end that is adjacent to a seat. The arm brackets are attached under a bottom portion of the seat. Each arm bracket is adjustable to provide a seat clearance area for the seat when one or more of the arm brackets are adjusted up to approximately 90 degrees from an original upright position.

      21.     Buzz Seating has not licensed the rights, title or interest in any of the Patents to any third party, including RFM Seating.

      22.     Buzz Seating holds the exclusive right, title and interest to enforce the Patents and to recover from any infringement of the Patents.

      23.     Buzz Seating continues to manufacture its SHIELD Chair® utilizing the protected claims in the Patents.

24. Buzz Seating is extremely active in manufacturing, selling, marketing and promoting its SHIELD Chair® on various media platforms, including through its website (https://buzzseating.com/shield-law-enforcement-chair/).

25. Buzz Seating derives substantial revenue from the sale of its SHIELD Chair®.

26. RFM Seating is a direct competitor to Buzz Seating.

27. RFM Seating sells a variety of office chairs on its website (www.rfmseating.com) and through representatives in all fifty (50) states.

28. RFM Seating's website states that "[s]ince 1980, we have been dedicated to crafting high-quality, ergonomic seating solution that promote health, productivity, and sustainability."

29. RFM Seating has been and is continuing to infringe on the Patents, in this judicial district and elsewhere, by providing its infringing product which individually and/or in combination, incorporates and/or uses subject matter, design and elements claimed by the Patents. Specifically, one of RFM Seating's chairs is a "military and police officer chair" or its ErgoProtect chair (the "Infringing Chair").

30. RFM Seating's Infringing Chair is manufactured and sold through various channels of trade including its website (www.rfmseating.com). *See*, Exhibit B.

31. RFM Seating's Ohio representative, Zott Marketing & Design's website (www.zottmad.com/rfmseating) advertises RFM Seating's "Specialty Seating" as its "heavy duty, well built chairs for bariatric application, Military & Police, court room reporters, Nursing Stations, & more. Add a logo to really make an impression." (https://zottmad.com/rfmseating, accessed on February 28, 2025). The Infringing Chair appears on this page. (https://img1.wsimg.com/isteam/ip/b634fdc9-37f2-4b10-b35c-

6

655155532649/Screenshot_20211019

200221_Photos.jpg/:/cr=t:0%25,l:0%25,w:100%25,h:100%25/rs=w:600,cg:true). *See*, Exhibit C.

32. RFM Seating's Infringing Chair, depicted below, is advertised and sold through its representatives in all fifty states, and through Zott in the State of Ohio. *See*, Exhibit C.

33. RFM Seating's Infringing Chair is also sold through other representatives across the country. *See*, Exhibit D.

34. The photograph below of RFM Seating's Infringing Chair along with the tagline "[d]esigned for those who wear duty belts" is a true and accurate depiction of the Infringing Chair advertised and/or authorized for publication by RFM Seating.



35. RFM Seating and Buzz Seating have the same channels of distribution and customers. Specifically, both RFM Seating and Buzz Seating use representatives to promote their products and at least one (1) representative agent has sold chairs from both companies.

36. RFM Seating and Buzz Seating sell directly to state and local political subdivisions. Both RFM Seating and Buzz Seating also provide products to the federal government through GSA.

37. RFM Seating's Infringing Chair utilizes the same design elements protected by the Patents.

38. By way of example, but not limitation, with respect to the '269 Patent, the Infringing Chair infringes on Claim 1 and 2. As claimed in Claim 1 of the '269 Patent, the end product is a unique chair comprising a "back member that tapers from top to bottom at an angle of approximately 22 degrees …", the two retractable arm brackets "retract the arms down in the rearward direction to provide a larger seat clearance from an original seat clearance…" These and other claimed inventions in the '269 Patent can be seen in the depictions of the Infringing Chair displayed on RFM Seating's website and its representatives' website. *See*, Exhibit A.

39. By way of example, but not limitation, with respect to the '530 Patent, every element contained in Claim 2 appear to be incorporated into the Infringing Product. The arm rails have two buttons, one button to raise and lower the top surface of the rails, and one to re-track the rail back (as is displayed in the competing products photos); thereby, the Infringing Product infringes Claim 2. As claimed in Claim 2 of the '530 Patent, the "original seat clearance when the two arm brackets are in the original upright position is less than a larger seat clearance when at least one of the two arm brackets are in the retracted position." Claim 9 of the '530 Patent includes a pneumatic cylinder on a base under the chair seat, attached to the base is a tilt tension to tilt the seat, a seat slider, and a 4-point anti-kick lock lever. As these elements appear to exist in the Infringing Product, the Infringing Product also infringes Claim 9 of the '530 Patent. *See*, Exhibit

A. These and other claimed inventions in the '530 Patent can be seen in the depictions of the Infringing Chair displayed on RFM Seating's website and its representatives' website.

40. By way of example, but not limitation, with respect to the '871 Patent, the Infringing Chair infringes upon Claims 2, 13, 15-16 and 20. Claim 2 of the '871 Patent includes a chair back that includes three portions, a top portion that tapers to a middle portion, and a bottom potion that attaches the chair back under the seat. Claim 2 states that the middle portion is approximately 3.5 inches. Claim 2 also indicates that the arm rests have a range of motion of 180 degrees. The Infringing Chair has a range of 90 degrees, and appears to push forward. Claim 15 and 16 of the '871 Patent include specific tapering dimensions, width and thickness proportions, sitting clearance, retractable arms, and the use of ballistic nylon upholstery. *See*, Exhibit A. These and other claimed inventions in the '871 Patent can be seen in the depictions of the Infringing Chair displayed on RFM Seating's website and its representatives' website. Based on these facts, the Infringing Product infringes upon Claims 2, 13, 15-16 and 20 of the '871 Patent.

41. The Infringing Chair uses the same color combination of ballistic nylon claimed in Claim 16 of the '871 Patent, so the Infringing Product appears to be the SHIELD Chair®.

42. RFM Seating advertises the Infringing Chair's design elements protected by the Patents. RFM Seating advertises its Infringing Chair as having "unique cutout in the back" which allows a person "to rest comfortably without digging into hips or lower back, which can help reduce pain and discomfort during long shifts."

43. Buzz Seating has never authorized or licensed the right to use any part or portion of the Patents to RFM Seating.

44. RFM Seating was notified of Buzz Seating's protected proprietary patented designs for its SHIELD Chair® after discovering RFM Seating's Infringing Chair.

9

45. Buzz Seating first contacted RFM Seating on May 30, 2018 to inform them that the Infringing Chair was a replication or copy of Buzz Seating's protected SHIELD Chair®. See, Exhibit E.

46. In response to this notice, RFM Seating appeared to remove the Infringing Chair from its website and price list; thus, it was believed RFM Seating ceased production of the Infringing Chair. However, RFM Seating did not cease production of the Infringing Chair. RFM Seating continued to manufacture the Infringing Product and sell it through its representatives, but hid its actions by removing the Infringing Chair from its website and price list for a period of time.

47. Buzz Seating contacted RFM Seating on January 13, 2025, and again on February 25, 2025, via electronic mail to Kent Gardner, demanding RFM Seating cease and desist manufacturing, promoting and selling its Infringing Chair. *See*, Exhibit F.

48. RFM Seating refused to comply with all of the demands to cease infringing the Patents.

49. On February 21, 2025, Buzz Seating was asked to drop off a sample of its SHIELD Chair® at the Green Township Police Department in Hamilton County, Ohio.

50. RFM Seating provided a sample of its Infringing Chair to the Green Township Police Department and the customer wanted to review the two chairs because they appeared to be very similar. The customer would then submit an order for purchase. The value of the order for chairs to be supplied to the Green Township Police Department is approximately $40,000.00.

51. Buzz Seating is aware RFM Seating has quoted and supplied its Infringing Chair to other customers for additional orders.

52. Due to various aspects of the Patents being copied and implemented in the Infringing Chair, customers have express confusion as to the origin and/or manufacturer of the Infringing Chair and Buzz Seating's SHIELD Chair®.

53. Despite demands to cease manufacturing the Infringing Chair, RFM Seating is continuing to use, manufacture, promote and/or sell the same Infringing Chair with a "unique cutout in the back" which allows a person "to rest comfortably without digging into hips or lower back, which can help reduce pain and discomfort during long shifts."

54. The Infringing Chair was advertised for sale on RFM Seating's dealer's website as recently as January 13, 2025.

55. The Infringing Chair was depicted as a scrolling graphic on RFM Seating's website as of February 28, 2025.

## COUNT ONE
## PATENT INFRINGEMENT
### (Direct Infringement of the Patents, in Violation of 35 U.S.C. § 271(a))

56. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint and further states as follow:

57. RFM Seating's Infringing Chair also referred to as the "military or police office chair" and/or the ErgoProtect chair has copied various claims protected by the Patents.

58. By way of example, and without limitation, the Infringing Chair infringes at least, Claims 1-2 of the '269 Patent, Claim 2 and 9 of the '530 Patent, and Claim 2, 13, 15-16, 20 of the '871 Patent.

59. RFM Seating is manufacturing, making, using, selling and/or offering for sale in the United States, including in this judicial district, products embodying the inventions claimed in

the Patents, and has in the past and is continuing to infringe the Patents, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

60. RFM Seating will continue to engage in the acts complained herein, unless restrained and enjoined, thereby it will continue to cause irreparable injury to Buzz Seating.

61. It is difficult to ascertain the amount of damages caused, and that would continue to be caused, by RFM Seating's infringement. Therefore, it is difficult to calculate an exact amount of damages that would afford Buzz Seating adequate relief, and make Buzz Seating whole from RFM Seating's future and continuing acts of infringement.

62. RFM Seating's infringement is willful, wanton, and deliberate, without license and with full knowledge of the Patents; thereby, making this an exceptional case entitling Buzz Seating to attorneys' fees and enhanced damages.

63. Buzz Seating is entitled to judgment in its favor against RFM Seating in an amount to be determined at trial but no less than $200,000.00, plus pre-judgment interest, post-judgment interest, attorney's fees and costs, and any further legal and equitable relief to which Buzz Seating is entitled.

**COUNT TWO**
**PATENT INFRINGEMENT**
**(Inducing Infringement of the Patents, in Violation of 35 U.S.C. § 271(b))**

64. Plaintiff hereby incorporates, as if fully rewritten herein, all allegations of its Complaint and further states as follows:

65. RFM Seating actively and knowingly induced infringement of the Patents, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its representatives and customers to market, sell, advertise, and purchase infringing products in violation of Buzz Seating's rights.

66. Buzz Seating has incurred damages as a result of RFM Seating's inducement of infringement of its rights, title and interest in the Patents.

67. RFM Seating threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, to Buzz Seating's irreparable injury. Unless RFM Seating is restrained and enjoined, Buzz Seating does not have an adequate remedy at law to address the damages caused by RFM Seating's unlawful infringement and inducement of infringement.

68. RFM Seating's infringement is willful, wanton, and deliberate, without license and with full knowledge of the Patents; thereby, making this an exceptional case entitling Buzz Seating to attorneys' fees and enhanced damages.

69. Buzz Seating is entitled to judgment in its favor against RFM Seating in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest, attorney's fees and costs, and any further legal and equitable relief to which Buzz Seating is entitled.

## PRAYER FOR RELIEF

Buzz Seating prays for relief as follows:

A. Judgment that RFM Seating has directly infringed, and induced others to infringe, the Patents either literally and/or under the doctrine of equivalents;

B. Judgment that RFM Seating's infringement of the Patents has been and continues to be willful and wanton;

C. Judgment permanently enjoining RFM Seating, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the Patents, and from inducing others to infringe the Patents;

D. Judgment awarding Buzz Seating general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of RFM Seating's profits or gains of any kind from its acts of patent infringement;

E. Judgment awarding Buzz Seating enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of RFM Seating's infringement;

F. Judgment awarding Buzz Seating all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

G. Judgment awarding Buzz Seating pre-judgment and post-judgment interest; and

H. Judgment awarding Buzz Seating such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Theresa L. Nelson*
Theresa L. Nelson (0072521)
BRICKER GRAYDON LLP
312 Walnut Street
Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 629-2720
Email: TNelson@brickergraydon.com
*Attorneys for Plaintiff Buzz Seating, Inc.*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues and claims so triable.

*/s/ Theresa L. Nelson*
Theresa L. Nelson (0072521)